UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF WISCONSIN

---

THE ESTATE OF JEFFERY NOTTESTAD, by its Special
Administrator Arianne Clark,

    Plaintiff,

        v.                      Case No.: _____

LA CROSSE COUNTY,
ADVANCED CORRECTIONAL HEALTHCARE, INC.,
AMBER FENNIGKOH
(in her individual capacity);
JULIE MCCORMICK (in her individual capacity);
KARI SALTER (in her individual capacity);
MAKAYLA STACKHOUSE (in her individual capacity);
and DANIELLE TILLMAN (in her individual capacity),

    Defendants.

---

## COMPLAINT

---

NOW COMES THE PLAINTIFF, the Estate of Jeffery Nottestad by Arianne Clark, by its attorneys, Gingras, Thomsen & Wachs by attorney Paul A. Kinne and Dana J. Wachs, and hereby states the following as its Complaint in the above-referenced matter.

**NATURE OF PROCEEDINGS**

1. This is a civil action under 42 U.S.C. § 1983, the Fourth, Eighth and Fourteenth Amendments to the United States Constitution, including but not limited to the Substantive Due Process Clause, brought to redress the defendants' deliberate indifference to Jeffery Nottestad's serious medical condition at the La Crosse County Jail, that resulted in his death, and the cruel and unusual punishment to which he was subjected to prior to his death when he was forced to lie next

to his urine and feces for multiple hours at a time, and when he was forced to crawl through his cell.

## PARTIES

2.  The Estate of Jeffery Nottestad is represented by the special administrator of his estate, Arianne Clark. Jeffery Nottestad, when he was alive, was an adult resident of Wisconsin, and resided within the jurisdiction of the United States District Court for the Western District of Wisconsin.

3.  La Crosse County is a municipal corporation created by the laws of the State of Wisconsin. It runs the La Crosse County Jail.

4.  Advanced Correctional Healthcare, Inc. ("ACH") is a company with which La Crosse County contracts to provide healthcare services in the La Crosse County Jail. Accordingly, ACH has assumed a role traditionally and exclusively provided by the government, i.e., La Crosse County.

5.  Amber Fennigkoh ("Fennigkoh") is an employee of ACH who worked at the La Crosse County jail at all times relevant to this matter. All conduct attributed to her in this complaint was undertaken in her individual capacity, under color of law and within the scope of her employment. Moreover, the conduct attributed to her was undertaken intentionally or recklessly.

6.  Julie McCormick ("McCormick") is an employee of ACH who worked at the La Crosse County jail at all times relevant to this matter. All conduct attributed to her in this complaint was undertaken in her individual capacity, under color of law and within the scope of her employment. Moreover, the conduct attributed to her was undertaken intentionally or recklessly.

7.  Kari Salter ("Salter") is an employee of ACH who worked at the La Crosse County jail at

all times relevant to this matter. All conduct attributed to her in this complaint was undertaken in her individual capacity, under color of law and within the scope of her employment. Moreover, the conduct attributed to her was undertaken intentionally or recklessly.

8. Makayla Stackhouse ("Stackhouse") is an employee of ACH who worked at the La Crosse County jail at all times relevant to this matter. All conduct attributed to her in this complaint was undertaken in her individual capacity, under color of law and within the scope of her employment. Moreover, the conduct attributed to her was undertaken intentionally or recklessly.

9. Danielle Tillmann ("Tillmann") is an employee of ACH who worked at the La Crosse County jail at all times relevant to this matter. All conduct attributed to her in this complaint was undertaken in her individual capacity, under color of law and within the scope of her employment. Moreover, the conduct attributed to her was undertaken intentionally or recklessly.

## JURDISDICTION AND VENUE

10. This court has jurisdiction over plaintiff's claims pursuant to 42 U.S.C. § 1983, the Fourth, Eighth and Fourteenth Amendments to the United States Constitution, and 28 U.S.C. §§ 1331 and 1343.

11. Venue in the Western District of Wisconsin pursuant to 28 U.S.C. § 1391 is proper insofar as the defendant is in this district, and the events giving rise to the claim took place within this district.

## FACTUAL ALLEGATIONS

12. In 2005, Jeffery Nottestad ("Nottestad") experienced a debilitating stroke. It left him totally paralyzed on his left side with no movement in his left arm or leg. He ambulated with a cane and a left foot and calf brace. Even so, he walked with great difficulty, swinging his right

leg and using the cane for balance.

13. On January 22, 2020, Nottestad shot himself with a low caliber pistol under his right chin, with an exit wound next to his left nostril.

14. Also on January 22, 2020, due to the self-inflicted gunshot wound, Nottestad was transported to the Black River Falls Memorial Hospital for stabilization. Later, he was admitted to Gunderson Lutheran Medical Center in La Crosse, Wisconsin.

15. At the time Nottestad injured himself, he was on probation and was a convicted felon. On January 31, 2020, he was discharged from Gunderson and placed in the custody of La Crosse County Jail because of a warrant out for his arrest (he was accused of violating the terms of his probation) and because there was proof that he was a felon in possession of a firearm.

16. Staff at Gunderson protested Nottestad's transfer from the hospital to a jail setting.

17. When Nottestad arrived at the jail, he was kept in an observation cell. The cell did not have a toilet or running water, but instead had a grate in the center of the cell into which Nottestad was expected to urinate and defecate. Only a correctional officer could flush the toilet.

18. Nottestad was not allowed to have his cane or his brace in the cell. Furthermore, he could not use a wheelchair in the cell. This made it impossible for him to ambulate in the cell aside from crawling. While there was a bed in the cell on which he could have sat or lied, because he could not get up and down from the bed, he had no choice but to lie on the floor of his cell so he could urinate and defecate.

19. On February 1, 2020, Nottestad was allowed to lie in urine for about five hours. He also lied next to his feces for about five hours before the grate was cleaned by guards. At some point during his incarceration, Nottestad also soiled the blanket and sleeping pad that was issued to him.

20. On February 1, 2020, Tillman, Salter and / or McCormick knew that Nottestad was complaining of pain.

21. Also on February 1, 2020, Tillman, Salter and / or McCormick knew that Nottestad had not been eating.

22. On February 2, 2020, Fennigkoh was made aware of Nottestad's continued complaints of pain. Nottestad begged to go to the hospital. Fennigkoh was also aware that Nottestad was not eating.

23. On February 3, 2020, in the morning after 9:00 a.m., Nottestad was removed from suicide watch and moved to a regular receiving cell.

24. On February 3, 2020, Nottestad complained to Stackhouse, Salter and / or McCormick of pain in his hip. He was clearly in pain and struggled to find a comfortable position. He was in so much pain that he was flailing his arms. Nottestad also complained of having no appetite, and he had eaten virtually nothing for three consecutive days.

25. During the night from February 3 to February 4, 2020, Nottestad barely slept and complained of pain.

26. On February 4, 2020, Nottestad complained to Stackhouse and Salter that his toes were turning purple, and he complained of calf and groin pain. Nottestad had a high blood pressure reading. Stackhouse and / or Salter checked his groin and calf, but ignored his complaints of pain.

27. Stackhouse and / or Salter noted that Nottestad was covered in abrasions and bruising. These abrasions were the result of him crawling and attempting to walk in his cell.

28. On February 4, 2020, Nottestad died. At about 10:30 a.m., a correctional officer noted that Nottestad had not moved in some time. When he investigated, Nottestad was not responsive.

Resuscitation efforts did not work, and they were abandoned at about 11:15 a.m.

29. An autopsy revealed that Nottestad died from multiple transmural duodenal ulcers perforating through the duodenum and into the pancreatic fat. There was stool present throughout the peritoneum, and there was a gastrointestinal hemorrhage with tarry stool present throughout the small and large bowel.

## CAUSE OF ACTION AGAINST ACH:
### DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED
### OFFICIAL CAPACITY CLAIM

30. Plaintiff states the preceding paragraphs as if set forth fully herein.

31. ACH has a set of policies, procedures and protocols that the individual defendants (Fennigkoh, McCormick, Salter, Stackhouse and Tillman) were bound to follow.

32. Those policies, procedures and protocols dictate when the individual defendants are to call a physician about a prisoner's medical condition, or seek emergency care from a hospital.

33. By virtue of its role of providing health care at the La Crosse County Jail, ACH had a Constitutional obligation to create and implement policies, procedures and protocols that provide a level of healthcare to which prisoners at the La Crosse County Jail are entitled.

34. ACH knew that prisoners with the medical condition of which Nottestad died would be imprisoned at the La Crosse Jail, and it knew that its staff would be called upon to identify the condition and treat it appropriately.

35. ACH knew that is policies, procedures and protocols in place at the La Crosse County Jail would not provide the level of health care to which prisoners like Nottestad were entitled under the Constitution. That is, ACH knew that its policies would cause the suffering and death of prisoners suffering from the condition from which Nottestad suffered and died.

36. In spite of this knowledge, ACH was deliberately indifferent to the harm caused by its policies, procedures and protocols.

37. This deliberate indifference caused Nottestad injuries, namely needless physical pain and suffering, and ultimately his death.

### CAUSE OF ACTION AGAINST LA CROSSE COUNTY: CRUEL AND UNUSUAL PUNISHMENT OFFICIAL CAPACITY CLAIM

38. Plaintiff states the preceding paragraphs as if set forth fully herein.

39. Nottestad was forced to crawl around in his cell like an animal, and lie in his urine and next to his feces for hours at a time, pursuant to policies, procedures and practices in place at the La Crosse County Jail.

40. La Crosse County knew that its policies, practices and procedures would violate Nottestad's rights under the Eighth and Fourteenth Amendments to the United States Constitution to be free from cruel and unusual punishment, i.e., to be free from punishment that deprived him of his dignity and subjected him to humiliation for no lawful purpose.

41. This deliberate indifference caused Nottestad severe and permanent physical, emotional and psychological injuries.

### CAUSE OF ACTION AGAINST THE INDIVIDUAL DEFENDANTS: DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED INDIVIDUAL CAPACITY CLAIMS

42. Plaintiff states the preceding paragraphs as if set forth fully herein.

43. By engaging in the conduct described in this complaint, the individual defendants were deliberately indifferent to Nottestad's serious medical condition. This deliberate indifference includes but is not limited to ignoring his complaints of pain and the symptoms of a life-threatening

condition until it was too late to save his life.

44. This deliberate indifference caused Nottestad severe and permanent physical, emotional, psychological and economic injuries, including death.

WHEREFORE, the plaintiff demands a trial by jury and the following relief:

1. Judgment in an amount sufficient to compensate the plaintiff for his / its injuries and losses;

2. An award of punitive damages sufficient to punish the individual defendants and discourage others from acting similarly;

3. Equitable relief designed to prevent future violations of the law;

4. Pre- and post-judgment interest;

5. An award of attorneys' fees and costs; and

6. Any other relief the Court deems just to award.

Dated this 23rd day of August, 2021.

> **GINGRAS, THOMSEN & WACHS LLP**
> Attorneys for Plaintiff
>
> *s/ Paul A. Kinne*
> Paul A. Kinne
> State Bar Number: 1021493
> Dana J. Wachs
> State Bar Number: 1009908

1850 Excelsior Drive
Madison, WI  53717
Phone:  (608) 833-2632
Fax:  (608) 833-2874
Email: kinne@gtwlawyers.com

Email: wachs@gtwlawyers.com